IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ELENA IVANOVNA BUYALOVA                                        PLAINTIFF

          v.                    Civil No. 5:25-cv-05077-CDC

SHERIFF JAY CANTRELL, Washington County,
Arkansas; RANDON MCCULLOUGH; HEARTSFIELD,
Fayetteville Police Department (FPD); GREG TABOR.
Washington County Detention Center (WCDC).
SAMUELS, FPD; CUNNINGHAM, WCDC; HOLMES,
WCDC; FULLER, WCDC; JOHNSON POLICE
DEPARTMENT (JPD); CHIEF OF POLICE CHRIS KELLY,
JPD; REYNOLDS, FPD; GENTRY, FPD; FRANKLIN, FPD; LIDIA
KUREVICH; UBOLRAT XAYSANASY; KNWA, Fayetteville
and Rogers Branches; KIETH SMITH, JPD; NEWSON,
WCDC; ANDERSON, FPD; KNOTTS, FPD; CRAFTON,
FPD; DICUS, FPD; SUTLEY, FPD; PARKS, FPD; BAILEY,
FPD; and HARRIS, FPD                                        DEFENDANT

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Elena I. Buyalova,[1] filed this action alleging civil rights violations under § 1983.

42 U.S.C. § 1983.   Plaintiff proceeds *pro se* and *in forma pauperis*.

The case was directly assigned to the undersigned Magistrate Judge.   However, because

not all parties to the action have consented to magistrate jurisdiction, and Plaintiff's claims require

dismissal, the Court enters its findings as a Report and Recommendation and the case will

automatically be reassigned to United States District Judge Timothy L. Brooks.   28 U.S.C. §

636(c); Rule 73 of the Federal Rules of Civil Procedure, and General Order 2024-02.

---

[1] Plaintiff previously filed a case with this Court under the name Yelena I Goforth, *Goforth v. Ruth, et al.,* 5:11-cv-05169-TLB (W.D. Ark. July 9, 2019) (dismissed as frivolous and a strike flag was placed on the case) (no appeal filed).

1

The case is before the Court for preservice screening of the Amended Complaint (ECF No. 7) under 28 U.S.C. § 1915(e)(2).

## I.    BACKGROUND

Upon review of original Complaint, it was determined that Plaintiff failed to state how each of the multiple individually named Defendants personally violated her federal constitutional rights. (ECF No. 6).   For this reason, Plaintiff was ordered to file an Amended Complaint by June 24, 2025.   Plaintiff was advised the Amended Complaint must contain short, plain statements telling the Court: (1) the constitutional right she believed was violated; (2) the name of the Defendant who violated the constitutional right; (3) exactly what the Defendant did or failed to do; (4) how the action or inaction of that Defendant is connected to the violation of Plaintiff's constitutional rights; and (5) what specific injury she suffered because of that Defendant's conduct.   *Id.*   She was cautioned that she "must affirmatively link the conduct of each named Defendant with the specific injury" and advised if she failed to do so, "the allegations against that Defendant will be dismissed for failure to state a claim."   *Id.*

Plaintiff timely filed her Amended Complaint on June 24, 2025.   (ECF No. 7).   On July 14, 2025, Plaintiff submitted a supplement to her Amended Complaint.   (ECF No. 8).

In Claim One, Plaintiff alleges that on March 16, 2025, she was taken into custody at the City of Johnson exit from Interstate 49.   (ECF No. 7 at 4).   She indicates Defendant Smith, with the Johnson Police Department ("JPD"), place the handcuffs on her "too tight" causing "purple prints" on her wrists.   *Id.*   She was taken to the Washington County Detention Center ("WCDC"), and Defendants Cunningham and Holmes saw the prints when she was in the medical room at the WCDC.   *Id.*   She maintains both were smiling and just allowed her to be booked.   *Id.*

Next, Plaintiff alleges she was placed in a very cold cell without a blanket or shoes for fifteen hours. (ECF No. 7 at 4). She maintains this constituted excessive cruelty. *Id.* She indicates she was wearing thick socks, capri pants, and a t-shirt while she was forced to sit on a "cement bench/floor." *Id.* She also maintains Defendant Holmes was smiling when he asked her if she knew where she was. *Id.*

While she was in the cell, Plaintiff alleges Defendants Newsom and Miller took "some" of her toilet paper away as she tried to place it on the floor or bench. (ECF No. 7 at 4). Plaintiff mentions she had been at the WCDC several times due to unjust charges of terroristic threatening and violation of a protective order during which they would place handcuffs and ankle cuffs on her in such a way that she could barely walk. *Id.*

Plaintiff alleges the March 16, 2025, arrest constituted her thirteenth unjust arrest. (ECF No. 7 at 4). Because she was upset, Plaintiff states her blood pressure went up to 214/137 and stayed that way. *Id.* After fifteen hours, she was taken to the emergency room. *Id.* Finally, Plaintiff discusses periods of time in 2011 when she was incarcerated in the WCDC and attaches a diary she kept at that time. *Id.* at 5.

In Claim Two, Plaintiff brings a conditions of confinement claim. (ECF No. 7 at 5). She lists the dates of occurrence as March 16, 2025, and February 11 or 17, 2011, through approximately September 23, 2011. *Id.* at 6. Plaintiff references having been sent for a mental evaluation; a bad tornado in Joplin, Missouri; having kept a jail diary in 2011; filing a civil rights case in federal court against multiple defendants in 2011; being harassed by inmates and deputies; being denied medical care; and FPD officers remarking they were familiar with her background. *Id.* With respect to her March 16, 2025, arrest she appears to allege a conspiracy between the

3

JPD, the FPD, and the Joplin Police Department stating that all their "chiefs were aware of what is going to happen." *Id.* She indicates Defendants Tabor, Rynolds, and Cantrell as well as ex-Sheriff Tim Helder, are the "most responsible ones-like" P. Kurevich and "my Jewish ex-husband" with the arrests beginning in March of 2007 extending until March of 2025. *Id.* She maintains it was a "planned abuse of harassment of a single person by US law enforcement and it has to stop." *Id.* She indicates she sees people all the time that commit crimes towards her, yet she is the one penalized. *Id.* Plaintiff references various immigrants she has met including those from Russia, Belarus, and the Ukraine. *Id.* at 6-7.

Next, Plaintiff says she was arrested six times due to a protective order obtained in March of 2007. (ECF No. 7 at 7). She also indicates she was accused of terroristic threatening by her ex-sister-in-law, her daughter, and a Mexican friend, Artiga. *Id.* Plaintiff denies she said the "phrase" she was accused of using. *Id.*

In Claim Three, Plaintiff asserts she has been harassed by the FPD, the Washington County Sheriff's Office ("WCSO"), JPD, Defendant McCullough, KNWA, Joplin Police Department, and P. Kurevich and her friends. (ECF No. 7 at 7). Plaintiff lists the dates of occurrence as March 16, 2025, March 18, 2007, July 22, 2009, February 11, 2011, through approximately September 23, 2011, and November of 2008, which she indicates are the dates of her arrests that she can recall. *Id.*

Plaintiff says that Defendant McCullough harassed her until he was arrested. (ECF No. 7 at 7). After his arrest, "his juveniles" harassed her with his vehicle. *Id.* Inevitably when she would begin driving, Plaintiff says she would see a police vehicle behind her and receive yet another ticket. *Id.* Plaintiff mentions Defendants Parks, Bailey, and Crafton and indicate they

"never penalized Nance, but gave him a ride to his place." *Id.* Plaintiff indicates Defendant Samuels refused to "help to transfer dying dog Apollo whom I watched to ER for animals but sent a cat that followed me [in a] police's car to Wedington Animal Clinic." *Id.* at 8.

Next, Plaintiff alleges Defendants Sutley, Logue, Knotts, Hartsfield, Franklin, Dicus, Oswalt, Partain, and Gentry all participated in the harassment which was "all approved by chief." (ECF No. 7 at 8). Plaintiff indicates she was issued 13 tickets and arrested 12 times by the FPD and the WCSO. *Id.* She has attached as an exhibit a record she obtained from the FPD which she maintains for some unknown reason does not show all the tickets she was issued. *Id.* Plaintiff mentions she had a meeting with Defendant Tabor and then Mayor Jordan to stop the harassment. *Id.* Eventually she says she was forced out of the area. *Id.* She indicates her reputation was ruined; she could not obtain a job; the Russian Consulate would not intervene; and the prolonged harassment resulted in multiple emergency room visits, high blood pressure, and chest pain. *Id.* With respect to her inability to obtain employment, Plaintiff indicates her arrest in July of 2014 over disciplining Black juveniles resulted in no employer wanting to hire her. *Id.* She states the injury to her reputation occurred because of reporting on KNWA and Heart Television. *Id.* Although she was harassed by Defendant Xaysanasy multiple times, she says he was never incarcerated like she was. *Id.*

In Claim Four, Plaintiff maintains that all the Defendants "misrepresented—true facts—about me—starting [with] creating false protective order" and "falsely accusing me of a phrase I never said." (ECF No. 7 at 9). She asserts that Defendant Xaysanasy falsely reported that she ran over her dog. *Id.* She says that Defendant Xaysanasy stalked and targeted her. *Id.* Plaintiff says she asked both Defendant Tabor and former Sheriff Tim Helder for an explanation

of why they followed her and arrested her over a false protective order and never received an honest answer.   *Id.* at 10.   She also questions why they started with "sexual pursuits towards me." *Id.*

In her supplement, Plaintiff contends that the harassment has continued towards her by the JPD, and she has been given two false warnings so far.   (ECF No. 8 at 1).   The first warning ticket was given by Defendant Smith.   *Id.* at 2.   Plaintiff indicates the JPD has started to involve more people in her case.   *Id.*   Each time she would take her dogs to the dog park, Plaintiff states something like a firetruck would start up and the dogs would start running.   *Id.*   Next, she was stopped when she approached a yield sign before the field and another car started to drive towards her.   *Id.*   Plaintiff indicates she was stopped while the other driver was not.   *Id.*   She maintains she deserves rest from the harassment and compensation.   *Id.*   She indicates the harassment has gone on since her divorce from Kurevich.

As relief, Plaintiff seeks compensatory and punitive damages.   Additionally, she would like all the Defendants removed from their jobs.   Finally, she would like a paragraph removed from "July 12-17, 2014"—about unjust, shameless arrest of me" from "KNWA, upi.com, khbs, Google, Facebook" and "prohibit publishing it anymore."   *Id.*

## II.    APPLICABLE STANDARD

The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous or malicious; (2) fail to state a claim upon which relief may be granted, or (3) seek monetary relief from a defendant who is immune from such relief.   28 U.S.C. § 1915(e)(2)(B)(i-iii).

A claim is frivolous if "it lacks an arguable basis either in law or fact."   *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   An action is malicious when the allegations are known to be

6

false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather than to vindicate a cognizable right. *Spencer v. Rhodes,* 656 F. Supp 458, 464 (E.D.N.C. 1987); *In re Tyler,* 839 F.2d 1290, 1293-94 (8th Cir. 1988). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, even a *pro se* Plaintiff must allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

## III.    DISCUSSION

Section 1983 was enacted to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 685 (1978). To assert a claim under § 1983, Plaintiff's must allege two elements: (1) the action occurred under color of law and (2) the action is a deprivation of a federal statutory or constitutional right.

### A.    Excessive Force Claim against Defendant Smith

The Fourth Amendment's objective reasonableness standard governs a claim that an officer used excessive force "in the course of making an arrest, investigatory stop, or other 'seizure.'" *Graham v. Connor,* 490 U.S. 386, 388 (1980); *see also Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). The test for assessing whether the violation of the right to be free from excessive force under the Fourth Amendment is "whether the amount of force used was objectively

7

unreasonable under the particular circumstances." *Vester v. Hallock,* 864 F.3d 884, 887 (8th Cir. 2017) (quotation marks omitted).

The Courts have recognized that to conduct an arrest, some degree of force is necessary. Therefore, the fact that force is used during an arrest does not *ipso facto* establish a Fourth-Amendment violation. *Crumley v. City of St. Paul,* 324 F.3d 1003, 1007 (8th Cir. 2003) ("Fourth Amendment jurisprudence has long recognized…the right to make an arrest…necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.") (internal quotation marks and citation omitted).

"Handcuffing inevitably involves some use of force," *Wertish v. Krueger,* 433 F.3d 1062, 1067 (8th Cir. 2006), and it will almost always result in some irritation, minor injury, or discomfort where the handcuffs are applied. *See Chambers v. Pennycock,* 641 F.3d 898, 907 (8th Cir. 2011) (citing *Rodriguez v. Farrell,* 280 F.3d 1341, 1351 (11th Cir. 2002)). Courts have found the application of handcuffs, even when tightly secured, is not an unreasonable use of force. *See Crumley,* 324 F.3d at 1008; *Foster v. Metro. Airports Comm'n,* 914 F.2d 1076, 1082 (8th Cir. 1990) ("allegations of pain as a result of being handcuffed without some evidence of more permanent injury" are insufficient to support an excessive force claim). "For the application of handcuffs to amount to excessive force, there must be something beyond minor injuries." *Hanig v. Lee,* 415 F.3d 822, 824 (8th Cir. 2005) (citing *Crumley,* 324 F.3d at 1008).

Plaintiff has not alleged the existence of any injury other than some visible lines from the handcuffing. This is insufficient to state a plausible excessive force claim against Defendant Smith, and it is recommended that this be dismissed.

**B.      False Arrest and/or Malicious Prosecution Claims Against Defendant Smith**

"It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments."   *Joseph v. Allen,* 712 F.3d 1222, 1226 (8th Cir. 2013) (internal quotation marks and citation omitted).   However, a false arrest claim under § 1983 "fails as a matter of law where the officer had probable cause to make the arrest."   *Kurtz v. City of Shrewsbury,* 245 F.3d 753, 758 (8th Cir. 2001).

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232 (1983).   The Eighth Circuit has stated that "[p]robable cause exists when "the totality of the circumstances at the time of the arrest '[is] sufficient to lead a reasonable officer to believe that the defendant has committed or is committing an offense." *Borgman v. Kedley,* 646 F.3d 518, 523 (8th Cir. 2011) (quoting *Fisher v. Wal-Mart Stores, Inc.,* 619 F.3d 811, 816 (8th Cir. 2010)).   "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt."   *Baribeau v. City of Minneapolis,* 596 F.3d 465, 474 (8th Cir. 2010).

Here, Plaintiff's Amended Complaint fails to state what why she was arrested.   Instead, she indicates only *where* she was arrested.   Further, she makes no factual allegations specific to Defendant Smith regarding the arrest on March 16, 2025, having been made by him without probable cause or for a reason other than a violation of the law.   For these reasons, she has failed to allege a plausible "false" arrest claim against Defendant Smith.

As set forth by the Supreme Court in *Thompson v. Clark,* 596 U.S. 36, 43 (2022), three elements are necessary to set forth a malicious prosecution claim under the Fourth Amendment.

9

These elements are: (1) the proceeding was instituted without probable cause; (2) the motive for instituting the suit was malicious that is for a purpose other than bringing Plaintiff to justice; and (3) the prosecution terminated in an acquittal or discharge of the Plaintiff. *Id.* Plaintiff has included no allegation that the charge or charges stemming from the March 16, 2025, arrest were resolved in her favor. She has failed to allege a plausible malicious prosecution claim against Defendant Smith.

### C.   Claims Against Private Parties

"Only a state actor can face § 1983 liability." *Doe v. North Homes, Inc.*, 11 F.4th 633, 637 (8th Cir. 2021) (citing *Youngblood v. Hy-Vee Food Stores*, 266 F.3d 851, 855 (8th Cir. 2001)). "Private individuals who commit torts, i.e., civil wrongs, against other private parties are generally not acting under color of state law when they commit those acts." *Blair v. Anderson*, No. 4:04cv3229, 2006 WL 2128010, *2 (D. Neb. July 26, 2006). But "in a few limited circumstances," a private entity [or private individual] "can qualify as a state actor," including "when the private entity [or individual] performs a traditional, exclusive public function," "when the government compels the private entity [or individual] to take a particular action" and "when the government acts jointly with the private entity [or individual]." *Halleck v. Manhattan Cmty. Access Corp.*, 587 U.S. 802, 809 (2019).

"[T]he mere furnishing of information to a law enforcement officer, even if the information is false, does not constitute joint activity with state officials." *Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009); *see also Wickersham v. City of Columbia*, 481 F.3d 591, 598 (8th Cir. 2007) ("[T]he mere invocation of state legal procedures, including police assistance, does not convert a private party into a state actor"). In this case, Plaintiff has alleged that Defendants

McCullough, Kurevich, and Xaysanasy were involved in furnishing false information to the police, including obtaining a protective order through false allegations, or were equally guilty but not charged.  These allegations fall far short of establishing any type of joint action or conspiracy with the law enforcement Defendants.  Similarly, the allegations against KNWA are that it broadcast a news report that included information about the Plaintiff.[2]  No joint action or conspiracy with the law enforcement Defendants is alleged to exist.  No plausible claims are asserted against Defendants McCullough, Kurevich, Xaysanasy, and KNWA.

### D.    General Allegations of Abuse and Harassment

While Plaintiff insists, she has been lied to, falsely arrested, harassed, embarrassed, and threatened by various of the Defendants, her Amended Complaint is virtually devoid of factual statements to support her allegations.  "Verbal threats do not constitute a constitutional violation." *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985). Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (claims of general harassment and of verbal harassment were not actionable under section 1983). "'The Constitution does not protect against all intrusions on one's peace of mind. Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest.'" *King v. Olmsted Cty.*, 117 F.3d 1065, 1067 (8th Cir. 1997) (quoting *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir. 1991)). The Eighth Circuit has held that a threat "constitutes an actionable constitutional violation only when the threat is so brutal or wantonly cruel as to shock the conscience, or if the

---

[2] The Court also notes the claims against KNWA stem from a broadcast in July 2014.  Even if KNWA was considered a state actor for purposes of § 1983, the claims would be barred by the statute of limitations.

threat exerts coercive pressure on the plaintiff and plaintiff suffers the deprivation of a constitutional right." *Id.* (cleaned up).   Plaintiff has not alleged that any of the Defendants intended to act, or did act, on the alleged threats.

The alleged pattern of tickets and arrests spans three decades with multiple years between many of the incidents.   The alleged pattern involves multiple police departments, including out of state police departments, and various private parties.   The only arrests that appear to be connected at all are those based on the existence of the protective order.   Plaintiff does maintain the protective order was obtained using false statements; however, those statements were made by the private parties seeking the order and cannot be attributed in any way to the law enforcement Defendants.   Once the protective order was issued by the Court, the law enforcement Defendants were required to enforce it when called upon to do so.

Plaintiff makes a passing reference to the harassment as being sexual in nature in connection with Defendant Tabor and former Sheriff Helder.   The Courts have recognized that sexual harassment "can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances" violate the constitution.   *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (Eighth Amendment case) (cleaned up). In an unpublished decision, *Howard v. Everett*, 208 F.3d 218, *1 (8th Cir. 2000) (table), the Eighth Circuit noted that although "sexual comments and gestures were reprehensible," that "sexual harassment, absent contact or touching, does not constitute the unnecessary and wanton infliction of pain." *Id.*   Although Plaintiff mentions the harassment as being sexual in nature, she does not allege Defendant Tabor or former Sheriff Helder engaged in any conduct that

would be violative of the constitution.   No plausible claims are stated based on the alleged harassment.

### E.   Statute of Limitations

Section 1983 does not contain its own statute of limitation.   Instead, causes of action under § 1983 are governed by "the most appropriate or analogous state statute of limitations."   *Wilson v. Garcia*, 471 U.S. 261, 268 (1985).   In Arkansas, this is the three-year personal injury statute of limitations, Ark. Code Ann. § 16-56-105(3).   *See Mountain Home Flight Serv., Inc. v. Baxter Cty., Ark.*, 758 F.3d 1038, 1044 (8th Cir. 2014).

A large portion of the incidents allegedly violating Plaintiff's constitutional rights occurred more than three years prior to April 10, 2025.   In other words, Plaintiff's claims stemming from incidents occurring prior to April 10, 2022, are barred by the statute of limitations.

### F.   Conditions of Confinement

Under the Fourteenth Amendment, "a pretrial detainee's constitutional rights are violated if the detainee's conditions of confinement amount to punishment." *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). There are two ways to determine whether conditions of confinement rise to the level of punishment. First, "a plaintiff could show that the conditions were intentionally punitive." *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 907 (8th Cir. 2020) (quoting *Bell*, 441 U.S. at 538). Alternatively, "if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate government purpose or were excessive in relation to that purpose." *Id.* (quoting *Bell*, 441 U.S. at 538-39).

In considering pretrial detainee conditions of confinement claims, moreover, courts view the "totality of the circumstances of [plaintiff's] confinement and not any particular condition in isolation." *Stearns*, 957 F.3d at 909. However, "[n]ot every disability imposed during pretrial detention amounts to punishment in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). "There is a *de minimis* level of imposition with which the Constitution is not concerned." *Id.*

Here, Plaintiff's only conditions of confinement claims which are not barred by the statute of limitations are those related to the March 2025 arrest.   In connection with that arrest, Plaintiff alleges she was placed in a very cold cell without a blanket or shoes for fifteen hours.   (ECF No. 7 at 4).   However, she indicates she was fully clothed "wearing thick socks, capri pants, and a t-shirt."   *Id.*   There are no allegations that any of the Defendants intentionally lowered the temperature in the cell she was placed in; no allegations that the temperature was at an unreasonably cold setting; only that Plaintiff felt "very cold."   Plaintiff remained in the cell for approximately fifteen hours.   At most, this was a "*de minimis* level of imposition with which the constitution is not concerned."   *Smith,* 87 F.3d at 268.   This is also true of the fact that two of the Defendants Newsom and Miller removed a portion of her toilet paper.   No plausible claim is stated.

### G.    Equal Protection

Recognizing that *pro se* complaints are to be construed liberally, the Court views the Amended Complaint to be asserting an equal protection claim.   The Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause generally requires the

government to treat similarly situated people alike." *Klinger v. Dep't. of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994). A Plaintiff must show she is similarly situated to those whom she compares herself to in "all relevant respects." *Carter v. Arkansas*, 392 F.3d 965, 969 (8th Cir. 2004) (cleaned up). The first step in an equal protection case, therefore, "is determining whether the plaintiff has demonstrated that she was treated differently than others who were similarly situated to her." *Id.; see also Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999) (the court's analysis of equal protection claims begins by asking whether the plaintiff has shown that he has been treated differently than others similarly situated). "Absent a threshold showing that [the plaintiff] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." *Id.*

In this case, Plaintiff alleges that in a variety of situations she was arrested while others either equally guilty in her eyes or those who were guilty were not. However, as with many of her claims, most of the incidents she refers to are barred by the statute of limitations. With respect to the March 2025 arrest, she alleges only that it was part of the general pattern of harassment that began in 2007. No plausible equal protection claim has been stated.

### H.    Personal Liability

Liability under § 1983 requires personal involvement in the constitutional violations. *Ashcroft v. Iqbal*, 566 U.S. 662, 676 (2009) (a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights"). Despite having been specifically instructed to describe exactly what each Defendant did or failed to do which violated her

15

constitutional rights, Plaintiff has not done so.   Instead, she has merely listed most of the Defendants in her broad conclusory allegations which are unsupported by factual detail.

## I.      Johnson Police Department

Finally, the Johnson Police Department is not a proper Defendant.   Police departments are not subject to suit under § 1983.   *See e.g., Ketchum v. City of W. Memphis,* 974 F.2d 81, 82 (8th Cir. 1992) (municipal departments like jails, police departments, and sheriff's offices are not legal entities subject to suit).

## IV.      CONCLUSION

For these reasons, it is recommended that:

- All federal claims be **DISMISSED** for failure to state a claim under 28 U.S.C. § 1915(e)(2) and for lack of jurisdiction.

- The Court decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).   The failure to file timely objections may result in waiver of the right to appeal questions of fact.   The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**Status of Referral:   The referral terminates upon the filing of this Report and Recommendation.**

**RECOMMENDED** this 24th day of July 2025.

*Christy Comstock*
_____
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE